UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES LEE WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No.1:14-cv-1914-LJM-MPB |
| ) | |
| DR. DOMINC J. MAGA, ) | |
| ) | |
| Defendant. ) | |

**Entry Denying Defendant's Second Motion for Summary Judgment and
Directing Further Proceedings**

For the reasons explained in this Entry, the defendant's motion for summary judgment [dkt. 84] is **denied.**

### I. Background

The plaintiff in this 42 U.S.C. § 1983 civil rights action is James Lee White ("Mr. White"), an inmate who at all relevant times was confined at the Fayette County Jail ("the Jail") as a pretrial detainee. The defendant is Dr. Dominic J. Maga ("Dr. Maga"). In his complaint, Mr. White alleges that Dr. Maga was deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment. He seeks compensatory damages.

The defendant seeks resolution of the plaintiff's claims through summary judgment. The plaintiff has responded to the defendant's motion for summary judgment and the defendant has replied. The plaintiff has also filed a surreply. The motion is ripe for resolution.

## II. Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## III. Discussion

### A. Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Mr. White, the non-movant, the following facts are undisputed for purposes of the motion for summary judgment:

On June 16, 2004, Mr. White received a sleep study at St. Mary's Medical Center. Dkt. 103-1 (Declaration of James Lee White ("White Decl."); Dkt. 103-2 (Plaintiff's "St. Mary's Medical Records"). As a result of the sleep study, Mr. White's physician, William R. Beam,

M.D., prescribed Mr. White a CPAP machine to treat his sleep apnea. Dkt. 103-2, at pp. 3, 5. Mr. White used the CPAP machine every night from June 2004 until his incarceration at the Jail in October 2011. Dkt. 103-1, ¶¶ 2-3.

On October 22, 2012, while confined in the Jail, Mr. White, by counsel, filed a Motion to Compel Medical Treatment. Dkt. 103-3 (Fayette County Circuit Court, Transcript of Evidence, November 16, 2012 Hearing ("Transcript"). On November 16, 2012, the Fayette Circuit Court held a hearing on Mr. White's motion. *Id.* During the hearing, Mr. White requested several medical treatments, including the use of a CPAP machine while incarcerated at the Jail. *Id.*, at pp. 7-10. Mr. White and Dr. Maga both attended the hearing and testified.

Mr. White testified regarding his need for a CPAP machine as follows:

Mr. White: . . . and . . . my sleep machine.

Mr. McMillin: For sleep apnea?

Mr. White: Yes, I have a sleep machine for sleep apnea and the guys at the jail have told me that I stopped breathing during the night and they've been scared for me sometimes, and um, and this machine stops that.

Mr. McMillin: How did you come into having that machine?

Mr. White: I took a test at uh, St. Mary's Hospital in West Virginia in the sleep center and they put on these sensors on you and you sleep for three or four hours and then they put a sleep machine on you and you sleep for four hours and they compare them and they found out that I had to have this sleep machine where I could possibly die from sleep apnea.

Mr. McMillin: Did you then use that sleep apnea machine?

Mr. White: Yes, I've used it every night since then.

Mr. McMillin: Where is it now?

Mr. White: It's at my house.

> Mr. McMillin: And you've been told by the jail officers it would be inappropriate for you to use that, is that correct?
>
> Mr. White: Yes, I have.
>
> Mr. McMillin: And do you feel that your life is in danger if you don't have that machine?
>
> Mr. White: Oh, definitely.

Dkt. 103-3, at pp. 11-12.

Dr. Maga, in turn, testified regarding his reasons for denying Mr. White's request for a CPAP machine and the health effects of sleep apnea:

> Ms. Jones: You heard the testimony about the few items in particular, we'll start with the um, sleep machine. Do you have comments on the necessity of the sleep machine for Mr. White?
>
> Dr. Maga: In reviewing the patient's record I just assumed this position as of the first of July uh, and I have not seen Mr. White uh, in the clinic uh, I have reviewed the record and I do not see anything in there about anyone reporting any sleep apnea events uh, for the patient uh, while he's been here even let along [sic] the last three or four months that I've been around. . . .
>
>     \* \* \*
>
> Ms. Jones: Okay, for um, security reasons in an institution such as a jail or a prison um, do you believe that those cords and (inaudible) a hazard and a danger to everybody in the block?
>
> Dr. Maga: It depends on obviously where they're at but my uh, impression is that there is no electrical um, outlet convenient that the patient could use that other people could not potential [sic] trip over it or going to…
>
> Ms. Jones: And the cords could be used as weapons as well, correct?
>
> Dr. Maga: Absolutely.
>
>     \* \* \*

>Mr. McMillin: ….brings you to the conclusion that uh, it would not be an appropriate machine to have in the walls of the jail, is that correct?
>
>Dr. Maga:     Correct.
>
>Mr. McMillin: . . . Were he not in jail, would there be a reason for him to be using the sleep apnea machine?
>
>Dr. Maga:     It would depend number one how severe his sleep apnea is. There are different degrees of sleep apnea. You can have patients that have one or two apnea events where they stop breathing during the night and I've seen treated patients that have hundreds of these apnea events during the night and uh, some of the apnea events lasts [sic] anywhere from three to five seconds and some up to two to three minutes. Now, once it gets into that two to three minute range is when it becomes potentially life threatening.
>
>Mr. McMillin: And some of them do result in death, correct?
>
>Dr. Maga:     Yes.

Transcript, Dkt. 103-3, at pp. 14-15, 17.

The Fayette Circuit Court denied Mr. White's motion to compel the use of the CPAP machine because of Dr. Maga's testimony "that there had been no reports of any sleep apnea problems." *Id.* at p. 23.

Mr. White was incarcerated at the Jail for approximately three months following the hearing on his motion to compel medical treatment. Dkt. 103-1, ¶ 10. Mr. White informed the nurses at the Jail that he needed a CPAP machine at least fifteen or twenty times. He also told the nurses that he had a sleep study in 2007. Dkt. 103-1, ¶ 7. When he asked the nurses about acquiring a CPAP machine, the nurses informed him that Dr. Maga said he did not need it. *Id.* at ¶ 8. Dr. Maga did not prescribe a CPAP machine for Mr. White or otherwise treat his sleep apnea.

In February 2013, Mr. White was transferred to Hocking Correctional Facility ("Hocking") in Nelsonville, Ohio. Dkt. 103-1, at ¶ 10. Mr. White requested a CPAP machine upon his arrival at Hocking and informed the medical staff at Hocking that he had received a sleep study at St. Mary's. *Id.* The representatives at Hocking confirmed Mr. White's sleep study results and need for a CPAP machine. *Id.* Mr. White received a CPAP machine within two days of arriving at Hocking and he has used it throughout his incarceration. *Id.*

**B. Analysis**

1. *Testimonial Immunity Defense*

Dr. Maga argues at length that he is entitled to testimonial immunity and that such immunity should result in summary judgment in his favor. Before the Court recruited counsel for Mr. White, Dr. Maga sent Requests for Admissions to Mr. White, one of which stated the following:

> Your claims in this matter are based upon the testimony of Dr. Dominic Maga, the defendant, at the hearing on your motion to compel medical treatment in case number 21C01-1110-FA-00917 that took place on November 16, 2012.

Dkt. 84-1, at p. 2.

Mr. White admitted this request for admission.

Dr. Maga argues that Mr. White's claim is based solely on his November 16, 2012, testimony. He contends that Mr. White is improperly attempting to avoid the testimonial immunity defense by raising claims that were not included in his complaint and which were foreclosed by his admissions.

> The factual allegations in the complaint consist of the following:
>
> Dr. Maga stated in court that I did not need my CPAP machine (for sleep apnea). I have sleep study results and a doctor's prescription for it. This caused me a failure to achieve stage 2 sleep. I was in a perpetual state of sleeplessness.

>Levi Cregor was an inmate at Fayette Co. Jail and will testify that I quit breathing many times.

Dkt. 1, at p. 3.

As his claim for relief, Mr. White sought compensatory damages "for each time I was made to sleep without my CPAP. Not having it made me sleep 4 or more times a day. 433 days." Dkt. 1, at p. 6.

Dr. Maga has curiously overlooked the fact that in the screening Entry issued on December 16, 2014, the Court ruled that "[c]onstruing the complaint liberally, the Court finds that it states a claim of deliberate indifference to a serious medical need in violation of the Fourteenth Amendment (assuming that Mr. White was a pretrial detainee rather than a convicted offender at the time the alleged incidents occurred)." Dkt. 8 at p. 1.

This was not the only time the Court ruled that Mr. White's claim extended beyond the circumstances and date of the hearing. The Court denied Dr. Maga's first motion for summary judgment based on the statute of limitations defense by concluding that "the alleged injury was not confined to the single day of November 16, 2012, and is alleged to be ongoing." Dkt. 78, at p. 4. Moreover, in the Background section of that Entry, the Court reminded the parties that it had "allowed the claim to proceed on a theory of deliberate indifference to a serious medical need." *Id.* at p. 1.

Having had to file a motion with the criminal court to try to obtain the CPAP machine, Mr. White reasonably "admitted" the request for admission which asked whether his claim was based on Dr. Maga's testimony. As a *pro se* litigant, Mr. White properly admitted the request for admission because part of the evidence against Dr. Maga is his testimony from that hearing.

Dr. Maga relied to his own detriment on his use of the requests for admissions and unreasonably failed to address the claim as it was defined by the Court. Mr. White will not be

restricted to such a narrow reading of his claim. Although Dr. Maga did testify in the court proceeding, he is named as a defendant because he was the Jail doctor, not because he was a witness in a court proceeding. Dr. Maga's argument that he is entitled to testimonial immunity is **rejected as meritless**.

    2. *Motion to Strike*

Mr. White argues in his response to the motion for summary judgment that Dr. Maga's testimony in his Second Affidavit should be stricken because it is based on hearsay and not personal knowledge. Dkt. 102, at p. 9. Mr. White requests that paragraphs 3-5, 7-12, and 14-17 of the Second Affidavit be stricken. *Id.* In his surreply, he also requests that paragraphs 5-21 of Dr. Maga's Third Affidavit be stricken because his testimony is based on unauthenticated medical records. Dkt. 109-1, at p. 11.

It is true that the medical records on which Dr. Maga based his affidavit testimony have not been authenticated or certified. Dkt. 106-2. Therefore, those records at this point are inadmissible hearsay. *Briggs v. Marshall,* 93 F.3d 355, 362 (7th Cir. 1996); *see also Robbins v. Lappin,* 170 Fed.Appx. 962, 964 (7th Cir. Feb. 21, 2006) (unauthenticated medical records are insufficient to defeat summary judgment).

Dr. Maga's Second Affidavit testimony in paragraphs 3-5, 7-12, and 14-17 and paragraphs 5-21 in his Third Affidavit are not based on personal knowledge, and therefore, are **stricken.** This ruling should not radically impair Dr. Maga's defense, however, because he is not precluded from having the medical records authenticated before trial.

    3. *Deliberate Indifference*

"The Eighth Amendment's prohibition on cruel and unusual punishment requires governments not to act with deliberate indifference to serious threats to prisoners' health and

safety…. For people [who are] in government custody other than through a criminal conviction, the Due Process Clause of the Fourteenth Amendment imposes at least as robust a duty on government custodians." *Daniel v. Cook County,* 833 F.3d 728, 733 (7th Cir. 2016) (internal citations omitted). "[C]ourts will look to Eighth Amendment case law in addressing the claims of pretrial detainees, given that the protections of the Fourteenth Amendment's due process clause are at least as broad as those that the Eighth Amendment affords to convicted prisoners." *Rice v. Correctional Medical Services*, 675 F.3d 650, 664 (7th Cir. 2012). "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to the prisoner exists, but intentionally or recklessly disregards that risk." *Phillips v. Sheriff of Cook County,* 828 F.3d 541, 554 (7th Cir. 2016) (internal quotations omitted). For a deliberate indifference claim, the plaintiff must prove two elements, "that he suffered from an objectively serious medical condition and that the defendant was deliberately indifferent to that condition." *Id.*

Dr. Maga did not dispute the first prong of Mr. White's claim, the existence of a serious medical need, until his reply brief. Mr. White correctly points out that any contention that he did not suffer from an objectively serious medical need has been waived. *Darif v. Holder,* 739 F.3d 329, 336 (7th Cir. 2014) ("arguments raised for the first time in a reply brief are waived."); *Griffin v. Bell,* 694 F.3d 817, 822 (7th Cir. 2012) (same). The Court had clearly put the parties on notice of Mr. White's claim. There is no reason Dr. Maga could not have raised this defense in his opening brief. Therefore, the "serious medical need" component of the deliberate indifference claim is not at issue because any dispute thereof has been waived.[1]

---

[1] Dr. Maga also argues in his reply that "It is well settled that evidence of professional medical standards must be established by expert proof." He cites an Indiana Court of Appeals case in support of that assertion. Mr. White does not bring a state law medical malpractice claim. A constitutional deliberate indifference claim is at issue. And, in fact, the Seventh Circuit has explained that a plaintiff can prove that a prison physician acted with deliberate indifference without presenting expert testimony. *See Petties v. Carter,* 836 F.3d 722, 728-731 (7th Cir. 2016).

The parties do, however, present material disputed facts on the issue of whether Dr. Maga acted with deliberate indifference. The relevant facts for this component of Mr. White's claim relate to what Dr. Maga was aware of and when. "To meet the second element, a plaintiff must show that the official knows of and disregards an excessive risk to inmate health or safety: the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Haywood v. Hathaway,* 842 F.3d 1026, 1031 (7th Cir. 2016) (internal quotation omitted). "A plaintiff need not prove that his complaints…were literally ignored; rather, he must show only that defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Id.* (internal quotation omitted). "An official is deliberately indifferent when he is subjectively aware of the condition or danger complained of, but consciously disregards it." *Rice,* 675 F.3d at 665. "[E]ven if a doctor denies knowing that he was exposing a plaintiff to a substantial risk of serious harm, evidence from which a reasonable jury could infer a doctor knew he was providing deficient treatment is sufficient to survive summary judgment." *Petties v. Carter,* 836 F.3d 722, 726 (7th Cir. 2016).

Dr. Maga's testimony in his Second and Third Affidavits are stunning in their contradictions. Dr. Maga has given three different reasons via sworn testimony for why he did not prescribe the CPAP machine. First, during the hearing on November 16, 2012, he stated that there were no reports of sleep apnea events in the medical records and the CPAP machine would not be appropriate to have in the Jail because of security and safety concerns. Second, in his Second Affidavit (filed on April 11, 2016, with his motion for summary judgment), he testified that he examined Mr. White on November 11, 2011, and that "was the only time that he reported a desire to have a CPAP machine." Dkt. 84-4, at ¶ 6.  He testified that Mr. White reported

"having difficulty getting to sleep." *Id.* Dr. Maga further testified that because Mr. White "did not then have a requirement for CPAP, nor did he have a recent sleep study to establish CPAP, I instructed the nursing staff to 'hold off on CPAP for now – patient doing well.'" *Id.*

Then, in Dr. Maga's Third Affidavit (filed on February 10, 2017, with his reply), in complete contradiction of everything he testified to in the prior affidavit, Dr. Maga testified that he did not work at the Jail until July 1, 2012. Dkt. 106-1, ¶ 4. He states that his predecessor evaluated Mr. White on November *1*, 2011. *Id.* at ¶ 6. The reason Dr. Maga provides in his Third Affidavit for not providing a CPAP machine to Mr. White is, "Because Mr. White was apparently asymptomatic and because I received no reports of any sleep apnea events, it was my medical opinion that Mr. White required no treatment for sleep apnea." *Id.* at ¶ 20.

As noted, it is undisputed that at least as of the date of the hearing on November 16, 2012, Dr. Maga was aware of Mr. White's assertion that he had been tested in a sleep study, he needed a CPAP machine because of his sleep apnea, he believed his life was in danger without the machine, and he had the CPAP machine at home. A reasonable jury could find that as of November 16, 2012, Dr. Maga was aware of Mr. White's desire and need for his CPAP machine, but unreasonably disregarded that awareness by failing to take any action to investigate or treat the sleep apnea.

The material question of fact in dispute is identified as follows:

Given the information Dr. Maga acquired at a minimum during the court hearing, was he deliberately indifferent to Mr. White's sleep apnea and requests for a CPAP machine?

## IV. Conclusion

Dr. Maga has not shown that he is entitled to judgment as a matter of law. Genuine issues of material fact exist as to whether Dr. Maga acted with deliberate indifference in denying a CPAP machine to Mr. White and not otherwise treating his sleep apnea. Accordingly, Dr. Maga's motion for summary judgment [dkt. 84] is **denied.**

The Magistrate Judge is requested to 1) set this matter for a status conference to discuss and direct the further development of this action, and 2) conduct a settlement conference. A trial date will be set in a separate Entry.

**IT IS SO ORDERED.**

Date: ___3/6/2017___

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel

Magistrate Judge Matthew P. Brookman